## Goldman's Estate

Before Lamorelle, P. J., Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ., and Marx, P. J., twenty-third judicial district.

The facts appear from the adjudication of

MARX, P. J., twenty-third judicial district, specially presiding, Auditing Judge.—Isaac Goldman, who died February 9, 1922, gave $10,000 in trust to pay the net income unto his parents, Joseph and Fannie Goldman, or the survivor of them, in quarterly or such lesser periodical payments as to his

trustee should seem meet and proper, during the term of their and each of their lives. Upon the death of the survivor of his parents, testator directed that the corpus of the principal of the said trust fund should be paid unto his wife if she should have remained unmarried, with limitations over in the event of her death or remarriage, unnecessary to recite in that she is living and has not remarried.

The accounting is of two funds received from Mollie Goldman, executrix of the will of testator.

The reason for the filing of the account is that the trust has terminated in that Joseph Goldman died July 14, 1925, and Fannie Goldman died December 26, 1932.

The account shows a balance of principal of $9,289.50, consisting of a mortgage of $6,000 secured on premises No. 2915 North Fifth St. and No. 2914 North Orkney St., and another mortgage of $4,000 secured on premises No. 814 South 20th St. Counsel for Mollie Goldman asks, inter alia, that the accountant be surcharged with the difference between the amounts invested in the mortgages and their present market value, or, in the alternative, that the trustee be required to take over the the said mortgage investments for his own account and to pay her the sum of $10,000 in cash.

The mortgage on premises No. 814 South 20th St. is dated April 16, 1924, and is payable within 3 years from the date thereof, and the mortgage secured on premises No. 2915 North Fifth St. and No. 2914 North Orkney St. is dated September 19, 1923, and is payable after the expiration of 3 years from the date thereof.

The trustee was called by counsel for the remainderman for cross-examination. . He testified that he examined both properties before taking the mortgages thereon, and that in his opinion these mortgages were good investments. As the auditing judge understands the contention of counsel for the remainderman, the surcharge is not asked on the ground that the trustee did not exercise a proper discretion in making these investments. The surcharge is based on the theory of negligence in the subsequent handling of these mortgages.

The trustee testified with respect to the mortgage secured on premises No. 814 South 20th St. that the interest was paid promptly; that it was sometimes a month or two behind, but there was no trouble in collecting it; that the interest was paid to date, and that the taxes for 1932 have not been paid.

With reference to the mortgage secured on premises No. 2915 North Fifth St. and No. 2914 North Orkney St., the trustee stated that the interest became in arrears some time in 1930; that the owner produced the tax receipts on the mortgaged premises up to 1930; that he was told the 1929 taxes were paid, but he did not see the receipt, but that it was probably shown to somebody in the store; that he asked the owner when he would pay the 1930 taxes and was told by him that the premises had been unoccupied for 2 years and that he would catch up with the taxes as soon as the premises were rented; that he knows now that the taxes for 1929, 1930, 1931 and 1932 have not been paid; that he did not enter up the bond or take any proceedings because he thought it was not necessary, and there would be no advantage to the estate gained by foreclosing on the property; that it was rented for $90, and the owner was willing to take $50 a month; that he rented it for a while for that and then rented it for $40 a month; that if it had been his own mortgage he would not have acted any differently; that he did the best he could; and that he spoke to Mr. Sandberg, his attorney, about it and was told that he should use his judgment in the matter.

He was asked whether he had examined the property in 1926, when the principal of the mortgage became due, and he answered in the affirmative, and added that it was in good shape; that it had been improved; that the owner had put in hot water heat; that it was a good-looking property; that he thought the mortgage was a good mortgage; that he believed the value of the property was more than the mortgage; that the present rental of the property is $50 a month; that the rental should be close to $75 a month; and that the front rents for $35 and the back property rents for $15. He further testified that he never asked the owner to reduce the principal; that while he knew real estate values were dropping he thought the mortgage was well secured on that property; that he thought the property was worth $6,000 today; and that when the owner did not pay the taxes for 1929 he made no attempt to collect the principal because they made promises and he took their word for it.

A letter was also produced showing that counsel for the remainderman was notified at the time the mortgage of $6,000 secured on premises No. 2915 North Fifth St. and No. 2914 North Orkney St. was taken. It was admitted by counsel for the remainderman that a similar notice had been given when the mortgage of $4,000, secured on premises No. 814 South 20th St., was taken.

Albert H. Lieberman was called as a witness on behalf of the remainderman. He testified that he had been engaged in the real estate business in Philadelphia for 28 years. He was asked to state the value of the two properties at the present time. The question was objected to and his testimony on this point was taken subject to the objection. He answered that the market value of the Fifth Street and Orkney Street property was $4,800, and for general appraisal purposes it could not be appraised for more than $5,500, and that would be liberal; that the market value of premises No. 814 South 20th St. was about $3,200; and that the maximum that you could get for it was $3,500.

He was also asked to state the market value of the North Fifth Street property in 1930 and November 1931. The question was objected to and his testimony on this point was taken subject to objection. He answered that 15 months ago the value of each of these properties would have been approximately $6,500. He further testified that the values in 1927 were very close to those of 1924; if anything, they might have improved; but that since 1927 there has been a steady decline; that the value of the North Fifth Street property began to decline a little earlier; and that the latter property began to show a definite sign of depreciation in the latter part of 1927 or the early part of 1928.

In the brief of counsel for the accountant, the following statement occurs: "Tenants were obtained for the properties in 1932 since which time all the net rents have been paid to the trustee by the owner so that the interest due at the time of the death of the life tenant was 13 months in arrears as to a balance due thereon."

In a letter dated May 5, 1933, signed by Morris H. Goldman, marked "A," attached hereto and made part hereof, the following statement occurs: "We understand that the accountant has for some time and is now collecting the rents from the two properties covered by the mortgages."

There is nothing in the testimony to warrant a surcharge on the ground that the accountant was negligent in the making of the investments. The accountant testified that a real estate agent examined the properties at the time when he made the investments, and that he considered the investments good then and so deems them now. As already stated, the real estate expert testified when the mortgages became due he considered each property was worth $6,500. Moreover, as the auditing judge understands, counsel for the remainderman does not ask for a surcharge on the ground that the original

investment was improper. His complaint is that when the principal of the mortgages became due the accountant failed to insist upon the payment of the principal or reduction in the amount thereof, and that he was negligent in failing to foreclose for the nonproduction of tax receipts at the time specified in the mortgages.

The accountant considered the advisability of instituting foreclosure proceedings. He consulted his counsel and was told to use his best judgment. He did so.

One of the properties was untenanted for two years. It is not surprising to learn that the owner did not pay the taxes and became in arrears as to the payment of interest. The owner assured the trustee that he would eventually pay the arrears of taxes, and when a tenant was finally secured for the property the rent was turned over to the trustee. He arrived at the conclusion that it was wiser to coöperate with the owner along this line rather than to institute foreclosure proceedings.

The auditing judge fails to see how the trustee's situation would have been improved if he had foreclosed. When a mortgagee forecloses, he usually loses the rent while the foreclosure proceedings are pending because the tenant takes advantage of that fact and declines to pay it. When he ultimately gets possession of the premises, he usually has to spend money to make repairs or improvements to secure a tenant. In addition, there are the legal costs incident to foreclosure proceedings. The owner probably paid the cost of repairs which were necessary to secure a tenant and to hold him. The accountant also testified that he considered the properties were well worth the amount of the mortgages. He acted according to his best judgment and discretion and the auditing judge is not at all convinced that the course of procedure adopted by him was not the proper one. A trustee should not be surcharged in a doubtful case. The trustee in the present instance has shown due diligence and has exercised his best judgment and discretion, and should not, in the opinion of the auditing judge, be surcharged.

The auditing judge therefore refuses to surcharge the accountant with the difference between the amounts invested in the mortgages and their present value, or, in the alternative, to direct the trustee to take over the said mortgage investments for his own account and to pay the remainderman the sum of $10,000 in cash.

Counsel for the remainderman further complains because of the application made of the rents collected. These rents were paid to the cestui que trust and none of them were applied in payment of the taxes in arrears. He contends that by this course of procedure there has been an undue discrimination exercised against the remainderman.

The account shows no collection of rents. Were it not for the statements made by counsel in their briefs, the auditing judge would naturally have assumed that there was no agreement between the trustee and the owners that the rents collected should be paid to him. There is no proof that the trustee in the exercise of his rights under the mortgages took possession of the properties. As the owners paid him the rents he probably considered that course unnecessary.

If the trustee had foreclosed, the unpaid taxes up to the time of foreclosure would have been charged to the principal of the estate. Any taxes, however, accrued thereafter would have been a charge against income: See Bockius Estate, July Term, 1916, No. 149. The trustee, in the opinion of the auditing judge, should have done that which would have been done had be foreclosed. The course of procedure adopted undoubtedly operated to the advantage of

the cestui que trust and the disadvantage of the remainderman, and it is reasonable to infer that if the matter had been taken up with the owners of the property that they would readily have consented to the application of the rents to the payment of taxes, for the court can take judicial notice of the fact that a penalty is imposed when the taxes become delinquent. This apparently was not done. The accountant seems to have taken into consideration the necessities of the cestui que trust and to have given no consideration to the interest of the remainderman. In the circumstances, the auditing judge is of the opinion that equity will be done if he awards the two mortgages to the remainderman, plus any interest that has accrued thereon which would otherwise have been awarded to the cestui que trust. This amounts, as stated in the petition for distribution, to $289.93.

Counsel for the remainderman also objects to the allowance of commissions of $500 on the principal of the estate, and to the counsel fee of $150 to Mr. Sandberg on the ground that the trustee was negligent in the management of the trust fund. As the auditing judge has already ruled there was no negligence, the commissions and counsel fee are allowed.

The petition for distribution asks that there be awarded out of the principal commissions, counsel fee and costs. It is stated that the commissions and counsel fee have not been paid. Credit should not be claimed in the account for anything that has not been paid, and to that extent the account is incorrect. However, the auditing judge takes the account as he finds it.

The two mortgages, aggregating $10,000, subject to the payment of taxes, and also subject to the payment of commissions $500, counsel fee $150, and costs of filing the account, etc., $60.50, is awarded to the said Mollie Goldman.

The balance of income shown by the account $52, and collections made since that time as shown by the appearance slip of counsel for the accountant $33.25, and any income uncollected or accrued and apportioned up to the time of the death of the cestui que trust, is awarded to the remainderman in part reimbursement of the taxes that were properly chargeable against the cestui que trust.

*Henry W. Schorr*, of *Wolf, Block Schorr & Solis-Cohen*, for exceptant.

*William Sandberg*, contra.

VAN DUSEN, J., June 29, 1933.—The auditing judge has properly found that the trustee was not negligent in managing the mortgage investment of which complaint is made. Negligence in such case is a mixed question of law and fact, and we would be loath to upset the conclusion of the auditing judge with regard thereto. When an investment gets into difficulties the law does not demand the impossible, but due attention and the proper exercise of judgment. When the interest is in arrears or the taxes unpaid, the trustee is not obliged to foreclose at once under penalty of surcharge. It may be the best policy to nurse the investment and to secure the interest and coöperation of the owner and perhaps some of his money to pull it through. It would be a mistake to hamper the trustee with a rigid rule, when business judgment deems the other the proper course. We see examples of this all around us in these times.

But such a course, as the auditing judge well says, should not be allowed to disadvantage principal. Distribution should be made of what the trustee gets as it would have been made if the trustee had foreclosed, and taxes should not be allowed to fall in arrears while income is paid out. A time should be fixed as of which the trustee should reasonably have begun and completed foreclosure for nonpayment of taxes. If he chose not to foreclose, he should

have seen that thereafter the income from the property was put into keeping down current charges such as taxes and that he got the rest of it. The trustee should insist on payment of taxes first; if his directions are not obeyed, he can foreclose, or he can keep on hand the payments which he receives on account of interest, to apply to the taxes when the time comes.

In this case taxes from 1929 inclusive remain unpaid. The middle of 1930 may be allowed as a reasonable time for the trustee to take command, and the remainderman will have to stand the arrears to that time. Thereafter the trustee got enough income to pay the taxes, though lately it has come in small amounts, apparently the rent from the property when and as the owner got it. Unfortunately the trustee has paid most of these sums out to the life tenant, and he will have to replace them.

The auditing judge awarded the remainderman something out of income toward paying the taxes, but he inadvertently used the wrong figures.

The exceptions are sustained to the extent of awarding to principal out of income sums equal to one half of the taxes and water rents for 1930, and the taxes and water rents for 1931 and 1932, with penalties and interest, this award to be in lieu of the total of $375.18 awarded by the auditing judge. Under the circumstances, the remainderman will be entitled to all receipts after the death of the life tenant, December 26, 1932, and must pay 1933 taxes, and there are no accruals to be adjusted. The amounts may be determined in settling the schedule of distribution.

All other exceptions are dismissed.

The auditing judge concurs in this opinion.